Filed 6/23/22  P. v. Rocha CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

DANIEL NINO ROCHA,

    Defendant and Appellant.

</td><td>

E077031

(Super.Ct.No. RIF1303076)

OPINION

</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Reversed and remanded with directions.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Daniel Nino Rocha appealed the sentence imposed following remand by this court with the direction that the trial court stay the 16-month sentence on count 3 under Penal Code[1] section 654.  Upon remand, the trial court vacated the sentence, and imposed and then stayed an upper term sentence of three years on count 3.  Defendant again appealed, arguing the trial court lacked jurisdiction to increase the sentence on count 3 from this court's dispositional order.  We agreed, as did the People, and remanded the matter to the trial court with directions to reduce the term on count 3 to a stayed 16-month term.

Defendant thereafter successfully petitioned the California Supreme Court for review.  The Supreme Court transferred the case to us with directions to vacate our earlier opinion and reconsider our decision in light of new sentencing laws.  We vacated our decision and allowed the parties to file supplemental briefs limited to matters arising after the previous decision in this matter.

In his supplemental brief, defendant contends the matter should be remanded for a new sentencing hearing because his case is not yet final, and he will benefit from the ameliorative changes of the new laws.  The People mostly agree.  We agree with defendant that recently enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) requires reversal of the true findings on the substantive gang offense and enhancements because

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

2

the new law increased the proof requirements under the gang statute (Pen. Code, § 186.22). We therefore remand to the trial court to (1) give the People an opportunity to retry the offense and enhancements under the law as amended by Assembly Bill No. 333 and (2) if the People elect not to retry defendant, or at the conclusion of retrial, to resentence defendant under the new sentencing laws. We otherwise affirm the judgment.

## II.

## PROCEDURAL BACKGROUND

On July 12, 2013, a jury found defendant guilty of assault with a firearm (§ 245, subd. (a)(2); count 1); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2); and street terrorism (§ 186.22, subd. (a); count 3). As to count 1, the jury found true that defendant had personally used a firearm (§ 12022.5, subd. (a)) and had personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). As to counts 1 and 2, the jury found true that defendant committed the crimes for the benefit of, at the direction of, or in association with, a criminal street gang (§ 186.22, subd. (b)(1)). In addition, defendant admitted that he had suffered one prior prison term (§ 667.5, subd. (b)(1)), one prior serious felony conviction (§ 667, subd. (a)), and one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

On August 30, 2013, the trial court sentenced defendant to an aggregate term of 38 years eight months in prison as follows: the upper term of eight years on count 1, a consecutive term of three years for the section 12022.7, subdivision (a) enhancement, a consecutive term of 10 years for the section 186.22, subdivision (b)(1) enhancement, and

3

a consecutive term of 10 years on the section 12022.5, subdivision (a) enhancement; a consecutive middle term of 16 months on count 2, with a consecutive, stayed, three-year term for the section 186.22, subdivision (b)(1) enhancement; a consecutive middle term of 16 months on count 3; plus a consecutive five-year term for the prior serious felony conviction; and stayed a one-year term for the prior prison term.

Defendant subsequently appealed his conviction and sentence. In a nonpublished opinion filed October 30, 2014, in case No. E059570, we affirmed the judgment of conviction, but directed the trial court to stay the 16-month sentence on count 3 pursuant to section 654. We specifically ordered that, "The judgment is ordered modified to stay the one-year-four-month sentence on count 3 (participation in a street gang) under section 654. In all other regards, the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment and to forward it to the Department of Corrections and Rehabilitation."

On February 25, 2015, after issuance of the remittitur in case No. E059570, at a hearing outside the presence of counsel and defendant, the trial court vacated defendant's sentence as to count 3, imposed an upper term of three years on that count, stayed the three-year term under section 654 on count 3, and closed the case.

On September 19, 2018, the court received a letter from the California Department of Corrections and Rehabilitation (CDCR) asking it to recall defendant's sentence and resentence him under section 1170, subdivision (d). Specifically, the CDCR noted that, in *People v. Gonzalez* (2009) 178 Cal.App.4th 1325 (*Gonzalez*), the Court of Appeal held

4

that a defendant could not be given separate sentences for enhancements under sections 12022.7, subdivision (a), and 186.22, subdivision (b)(1)(C)—one of the terms had to be stayed. The CDCR recommended that the trial court comply with the mandates of *Gonzalez.*

Upon receiving the letter from CDCR, the trial court appointed counsel to represent defendant. In their respective briefing, both parties agreed that *Gonzalez* controlled and that defendant's sentence on the section 12022.7, subdivision (a) enhancement—the shorter enhancement term—had to be stayed under section 654. Among other requests, defense counsel asked the court to "correct" the sentence on count 3 "so that it conform[ed] with the command of the remittitur." Counsel pointed out that this court had directed a modification of the original judgment to reflect a 16-month stay on count 3, but that the trial court had instead imposed a three-year term on that count before staying it. Counsel argued that the trial court's order was void and an excess of jurisdiction.

At a hearing held on April 30, 2021, the trial court followed the recommendation of the CDCR by staying defendant's sentence on the section 12022.7, subdivision (a) enhancement under section 654. The court, however, declined to make any other changes to defendant's sentence. As to defendant's request to reduce the stayed three-year term on count 3 to 16 months, the court stated: "All right. So, as mentioned, the original sentence to Mr. Rocha was 38 years eight months. However, after the remittitur, the Court stayed Count 3 pursuant to [section] 654 and the new sentence was 37 years four

5

months because that 16-month sentence was not allowed under the [C]ourt of [A]ppeal opinion. The Court had previously simply sentenced him to the upper term of three years. Rather than staying the 16 months, I stayed the three years. [¶] It doesn't really make much difference one way or the other because that time can never be imposed. When and if Mr. Rocha is paroled, if he violated, he doesn't get that time. That time can never be imposed upon him. So there's no danger of him receiving more time than he should. So there was no additional issues taken by the Court's imposition of the three years which was stayed, and so I think we'll just stick with that." The court therefore imposed a total prison term of 34 years four months.

Defendant timely appealed from the court's judgment, arguing the trial court lacked jurisdiction to increase the sentence on count 3 from this court's dispositional order. We agreed and remanded the matter to the trial court with directions to reduce the term on count 3 to a stayed 16-month term. Defendant thereafter successfully petitioned the California Supreme Court for review. On February 23, 2022, the Supreme Court transferred the case to us with directions to vacate our November 2021 opinion and reconsider our decision in light of the new sentencing laws, effective January 1, 2022: Assembly Bill No. 1540 (Stats. 2021, ch. 719), Senate Bill No. 567 (Stats. 2021, ch. 731), Assembly Bill No. 124 (Stats. 2021, ch. 695), Senate Bill No. 483 (Stats. 2021, ch. 728), Assembly Bill No. 518 (Stats. 2021, ch. 441), and Assembly Bill No. 333 (Stats. 2021, ch. 699).

III.

DISCUSSION

Defendant contends that we must remand the matter to the trial court for a new sentencing hearing in light of new, intervening legislation. The People largely agree. They agree a remand is appropriate in light of Senate Bill Nos. 567 and 483 and Assembly Bill Nos. 1540, 124, and 518. They disagree as to Assembly Bill No. 333, which the People believe does not apply to this case.

A.    *Assembly Bill No. 1540*

Former section 1170, subdivision (d)(1), which was in effect at the time of the trial court's order, authorized trial courts to recall sentences upon recommendation from the CDCR Secretary and to resentence defendants in the same manner as if they had not previously been sentenced, provided any new sentence is not greater than the initial sentence. That section required the resentencing court to "apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing." (Former § 1170, subd. (d)(1).) It further provided factors to consider in resentencing including postconviction factors, the defendant's risk of future violence, and whether the defendant's continued incarceration is in the interest of justice. (*Ibid.*) The trial court may reduce a defendant's term of imprisonment and modify the judgment if it finds the reduction is in the interest of justice. (*Ibid.*)

On October 8, 2021, the Governor signed Assembly Bill No. 1540, which took effect on January 1, 2022. (Stats. 2021, ch. 719.) Assembly Bill No. 1540 substantially

7

altered the recall and resentencing process and moved the resentencing provisions in former section 1170, subdivision (d)(1), to a new section 1170.03. (Stats. 2021, ch. 719, § 3.1.) Among other things, section 1170.03 requires the trial court in the resentencing proceeding to apply ameliorative changes in the sentencing laws (§ 1170.03, subd. (a)(2)); clarifies and expands the factors the trial court may consider in its initial decision to recall a sentence (§ 1170.03, subd. (a)(4)); provides that a defendant has a statutory right to be present at the recall hearing (§ 1170.03, subd. (a)(8)); and, if a resentencing request is from the Secretary, creates a presumption favoring recall and resentencing of the defendant, which may only be overcome if the trial court finds the defendant is an unreasonable risk of danger to public safety (§ 1170.03, subd. (b)(2)).

In part, Assembly Bill No. 1540 was passed to "clarify the intent of the [L]egislature when it amended [§ 1170] in 2018." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3rd reading analysis of Assem. Bill No. 1540 (2021-2022 Reg. Sess.) as amended Sept. 3, 2021, p. 3.) Because Assembly Bill No. 1540 was passed in part to clarify legislative intent, it may be considered in interpreting former section 1170, subdivision (d). (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 [" 'if the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration' "]; *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1041 [Legislature "repeatedly indicated" that Assembly Bill No. 1540 was intended to " 'make clarifying changes' " to former section 1170, subdivision (d)(1),

8

"including specifying the required procedure and guidelines when the CDCR recommends recall and resentencing."]) Although defendant's underlying conviction is final, the order denying his relief is still on appeal before us, and it is undisputed that the law has changed in the window between decision and review.

As noted above, the parties agree that this court should reverse and remand so that the trial court may reconsider CDCR's recommendation by applying section 1170.03. We also agree. While the parties disagree as to whether the retroactivity rule pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) applies here, we need not resolve that dispute given the parties agreement to remand. Further, judicial economy warrants reversal and remand. Even if this court were to decide that the new law does not apply here, the Secretary could simply submit a new recommendation letter which would then be subject to the new law. It would be a waste of judicial resources to decide this case under the old law.

B.     *Senate Bill Nos. 567 and 483*

Senate Bill No. 567 (2021-2022 Reg. Sess.), which became effective on January 1, 2022, modified section 1170, subdivision (b), to require imposition of the middle term of imprisonment unless circumstances in aggravation justify imposition of a greater sentence and are found true beyond a reasonable doubt or stipulated to by the defendant. (Stats. 2021, ch. 731, § 1.3.) Senate Bill No. 567 thus altered the statutory scheme for selecting between triad terms under section 1170 subdivision (b). (Stats 2021, ch. 731, § 1.3.) In light of this change, in accordance with the agreement of the parties that

9

remand is appropriate, and because these changes apply retroactively to defendant's nonfinal judgment (see, e.g., *People v. McKenzie* (2020) 9 Cal.5th 40, 51; *People v. Stamps* (2020) 9 Cal.5th 685, 699), we also find that a remand is necessary to allow the trial court to exercise its new sentencing discretion under Senate Bill No. 567.

Senate Bill No. 483 added section 1171.1 to the Penal Code. This section states, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1171.1, subd. (a).) Once a trial court is made aware of a sentence which includes such an enhancement, "the court shall recall the sentence and resentence the defendant." (§ 1171.1, subd. (c).)[2]

Once a trial court initiates recall and resentencing, the court must appoint counsel. (§ 1171.1, subd. (d)(5)). Any resentencing "shall result in a lesser sentence than the one originally imposed . . . unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1171.1, subd. (d)(1).) In addition to striking the now invalid prior prison enhancement, the court is also required to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion." (§ 1171.1, subd. (d)(2).) The court is also prohibited from imposing any upper term for any conviction "unless there

---

[2] Section 1171.1 requires the CDCR to identify people in custody who are serving a sentence that includes a now invalid enhancement and to notify the sentencing courts of their names, dates of birth, and case or docket numbers by March 1 or July 1, 2022 (depending on their sentencing details) and requires the courts to act on the information by October 1, 2022, or December 31, 2023. (§ 1171.1, subds. (b), (c).)

are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1171.1, subd. (d)(4).) Finally, Senate Bill No. 483 states it was the Legislature's intention that "any changes to a sentence as a result of [Senate Bill No. 483] shall not be a basis for a prosecutor or court to rescind a plea agreement." (Stats. 2021, ch. 728, § 1.)

Because defendant's sentence is not yet final, he is entitled to the changes to recall and resentencing enacted by Senate Bill No. 483. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 972.) The People concede as much, and there is no dispute defendant's sentence includes a prior prison enhancement, which is now invalid under section 1171.1 Therefore, defendant is entitled to have the trial court recall his sentence and resentence him under the limitations section 1171.1 imposes.

In addition, the trial court must give defendant the benefit of any other ameliorative changes in the law since his original resentencing when resentencing him again. For instance, when defendant was originally sentenced, the trial court was required to impose a five-year prior serious felony enhancement under section 667, subdivision (a), and a firearm use enhancement under section 12022.5, subdivision (a). Now both are discretionary. (*People v. Alexander* (2020) 45 Cal.App.5th 341, 344; see *People v. Watts* (2018) 22 Cal.App.5th 102, 119.) Therefore, on resentencing, the trial court should consider whether to reimpose the prior serious felony and firearm use

enhancement in addition to applying any other ameliorative changes to the law which might benefit defendant.

C. *Assembly Bill Nos. 124 and 518*

Assembly Bill No. 124 amended the provisions also concerning selection of a prison term from the triad of lower, middle, and upper terms to require a court to ordinarily impose the lower term, except under limited circumstances, if the defendant was under the age of 26 (as defendant was in this case) when he or she committed the crime. (Stats. 2021, ch. 695, § 5, [§ 1170, subd. (b)(2)].) Assembly Bill No. 518 (Stats. 2021, ch. 441, §1) amended section 654 to permit the court to choose the lesser punishment where an act is punishable by either a lesser or a greater punishment. Since our remand will necessarily result in resentencing, the trial court will necessarily adhere to the law then in effect to the extent that it benefits defendant.

D. *Assembly Bill No. 333*

On October 8, 2021, the Governor signed Assembly Bill No. 333 into law. (Stats. 2021, ch. 699.) This new legislation went into effect on January 1, 2022, and made a number of significant modifications to the requirements for proving a criminal street gang enhancement. Section 186.22 makes it a crime to actively participate in a criminal street gang, and the statute provides for enhanced punishment when a defendant is convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with any criminal street gang." (Former § 186.22, subd. (b)(1).) Defendant's judgment includes a conviction (count 3) and two enhancements under this statute.

The new law made noteworthy modifications to section 186.22. First, the law amends the definition of a " 'criminal street gang,' " requiring proof that the gang is an *organized* association, whose members *collectively* engage in, or have engaged in, a pattern of criminal activity (§ 186.22, subd. (f)). Previously, the statute defined a " 'criminal street gang,' " as "any ongoing organization, association, or group of three or more persons . . . whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f).) Second, it amends the definition of what constitutes a " 'pattern of criminal gang activity' " by requiring the last offense to have occurred within three years of the date the current offense is alleged to have occurred. (§ 186.22, subd. (e)). Previously, the prosecution needed to prove only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another. (Former § 186.22, subd. (e).) Third, it narrows the list of crimes that may be used to establish a pattern of criminal gang activity (compare former § 186.22, subd. (e)(1)-(33), with § 186.22, subd. (e)(1)(A)-(Z)). Fourth, it prohibits use of the currently charged offense to establish a pattern of criminal gang activity (§ 186.22, subd. (e)(2)). Fifth, it defines "to benefit, promote, further, or assist" as used throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (§ 186.22, subd. (g).) And finally, the new law adds section 1109 to the Penal Code, requiring bifurcation of gang enhancements charged under section 186.22, subdivision (b) or (d), to be tried separately from the underlying charges upon request

13

from the defense.  (Stats. 2021, ch. 699, § 5.)  Section 1109 also requires the substantive offense of active participation in a criminal street gang (186.22, subd. (a)) to be tried separately from all other counts that do not require gang evidence as an element of the crime.

"[P]erhaps most notably, Assembly Bill [No.] 333 requires the prosecution to prove that the benefit the gang derives from the predicate and current offenses is 'more than reputational.'  (Stats. 2021, ch. 699, § 3 [enacting § 186.22, subd. (g)].)  New section 186.22, subdivision (g), provides, 'As used in this chapter, to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational.  Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.' "  (*People v. E.H.* (2022) 75 Cal.App.5th 467, 478 (*E.H.*).)  In summary, section 186.22 now "requires proof of the following additional requirements with respect to predicate offenses:  (1) the offenses must have 'commonly benefited a criminal street gang' where the 'common benefit . . . is more than reputational'; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense cannot be used as a predicate offense." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345 (*Lopez*).)

The parties agree, as do we, that Assembly Bill No. 333's substantive changes apply retroactively to all cases in which the judgment of conviction is not yet final because the changes " 'redefine, to the benefit of defendants, conduct subject to criminal sanctions.' " (*E.H.*, *supra*, 75 Cal.App.5th at p. 478, quoting *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 300-301 & citing *Estrada*, *supra*, 63 Cal.2d 744; accord, *Lopez*, *supra*, 73 Cal.App.5th at p. 344 [substantive changes in Assembly Bill No. 333 apply retroactively to all whose judgments are not yet final on the amendments' operative date].)

The People, however, argue that because defendant's judgment in this case was final and Assembly Bill No. 333 is not a sentencing law, it does not apply to this case. The People acknowledge that our Supreme Court in *People v. Padilla* (2020) 50 Cal.App.5th 244 (*Padilla I*), recently considered the question of "When a judgment becomes final, but is later vacated, altered, or amended and a new sentence imposed, is the case no longer final for the purpose of applying an intervening ameliorative change in the law?"

*Padilla I* involved a habeas petitioner who committed a murder when he was 16 years old. He was convicted of the murder and sentenced to life without the possibility of parole (LWOP) in 1999. (*Padilla I*, *supra*, 50 Cal.App.5th at pp. 246-247.) After his conviction was final, Padilla filed a habeas petition asking to be resentenced. (*Id.* at p. 248.) The trial court granted the petition and resentenced him to LWOP. (*Ibid.*) The appellate court reversed the trial court's decision and remanded for reconsideration.

(*Ibid*.)  Proposition 57 took effect while the matter was pending in the trial court on remand.  After the trial court reimposed LWOP, Padilla sought transfer to the juvenile court under Proposition 57.  (*Padilla I*, at p. 248.)

The Court of Appeal held that "a collateral proceeding may reopen the finality of a sentence for retroactivity purposes, even while the conviction remains final."  (*Padilla I*, *supra*, 50 Cal.App.5th at p. 253.)  It found the petitioner's sentence was no longer final as it had been vacated by the habeas court, and, even if all matters not encompassed by resentencing were still final like the finding of guilt, Proposition 57 nonetheless applied to his resentencing because a juvenile court disposition would be more advantageous to the petitioner than sentencing him as an adult for the criminal offense.  (*Padilla I*, at pp. 253-254.)  The court explained, "[b]ecause Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, we conclude it applies retroactively to appellant's nonfinal sentence and requires that he receive a transfer hearing."  (*Id*. at p. 255, fn. omitted; accord, *People v. Montes* (2021) 70 Cal.App.5th 35, 47-48 [we concluded a resentencing under section 1170, subdivision (d), results in a new sentence and the judgment is no longer final, thereby entitling the defendant to the ameliorative benefits of Proposition 57]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 994-997.)

Recently, on May 26, 2022, our Supreme Court agreed with the Court of Appeal in *Padilla I*.  (See *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla II*).)  After a lengthy analysis of *Estrada*, *supra*, 63 Cal.2d 740, statutory interpretation and constitutional

16

concerns, the Supreme Court concluded "once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence." (*Padilla II*, at p. 163.) The court explained: "It is clear that Padilla's present appeal from his resentencing is part of direct review of a nonfinal judgment, not collateral review of a final judgment. The court had the power to impose any sentence available for his crime, including life without the possibility of parole if it found that sentence appropriate in light of Padilla's ' "youth and its attendant characteristics." ' [Citation.] Indeed, while collateral review is an attack on a final judgment, that is plainly not the posture here. When Padilla's new sentence was imposed, there was no final judgment to attack because his prior sentence had been vacated." (*Ibid.*)

Based on our Supreme Court's decision in *Padilla II*, we find that Assembly Bill No. 333 applies to this case.

In *E.H.*, *supra*, 75 Cal.App.5th 467, we held that because Assembly Bill No. 333 requires findings by the jury on which they were not instructed, and because the instructions given permitted the jury to rely on now inapplicable criteria, reversal is required unless " 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (*E.H.*, at p. 479, quoting *People v. Flood* (1998) 18 Cal.4th 470, 504.) Defendant contends that reversal is required because no evidence was admitted to establish that the predicate crimes were no more than reputational and/or any

17

evidence to show the purported members of his gang collectively—as opposed to individually—engaged in a pattern of criminal gang activity.

Here, according to our prior opinion from defendant's direct appeal,[3] Sergeant Hobb, a gang expert, testified that "Eastside Banning Sapos gang (ESBS) is the largest gang in the Banning/Beaumont area. There are three cliques within the gang: the Santos, the Mad Ass Youngsters, and the Pee Wee Locos. The gang's primary activities are auto thefts, drug sales, thefts, burglaries, and possession of guns. Nongang members usually refuse to cooperate with law enforcement when ESBS is involved because of fear of retaliation and intimidation by the gang.

"According to Hobb, ESBS committed two predicate crimes. On May 29, 2009, Hobbs stopped a vehicle driving in a neighborhood where there were reports of shootings. Three ESBS members were in the car. Hobb found two loaded firearms in the car.

"The second predicate crime was on January 6, 2010, when five ESBS members, including defendant, got out of a car at an intersection and chased the 18-year-old victim and his brother. The brother escaped but the ESBS members severely beat up the victim, who was wearing a leg brace. A passerby intervened and called the police. Defendant was arrested and charged with assault with a deadly weapon and a gang enhancement.

---

[3] Taken from this court's prior nonpublished opinion in defendant's prior appeal, case No. E059570, which is part of the record on appeal in this case. (*People v. Rocha* (Oct. 30, 2014, E059570) [nonpub. opn.], at pp. 7-9.)

18

"In Hobb's opinion, defendant and Gabriel [Herrera] were active ESBS members. During several police interviews, including in the instant case, defendant admitted membership and said he had a gang moniker. Defendant also had numerous gang tattoos and was seen on his brother's website throwing gang signs. Gabriel also admitted gang membership, beginning in 2007, and claimed to be a member of the Pee Wee Locos ESBS clique. He had a moniker and several gang tattoos. Hobb also knew Rosanne Saubel. He had been in her home and had seen ESBS graffiti on her daughter's bedroom walls and door frame.

"Hobb testified he would be suspicious if he saw two ESBS members walking around a neighborhood, jumping over fences, and looking into backyards. He would suspect the men were looking for someone or something to steal. In Hobb's opinion, if defendant fired a gun at a civilian, the crime would benefit ESBS by instilling fear in the community and allowing ESBS to operate with impunity, since witnesses and victims would be afraid to contact law enforcement. Defendant's possession of a gun also benefited ESBS, because it was used to protect defendant from other gang members and law enforcement. Gun possession allowed defendant to harm others and commit crimes.

"According to Hobb, it can be assumed that, if a citizen confronts two gang members, the gang members will respond violently in defense of their turf, because the gang's reputation is at stake. A violent response would benefit the gang. Hobb strongly believed that defendant's crimes were committed for the benefit of ESBS. The violence escalated from a fistfight to discharging a gun against [David] Jackson. Defendant and

19

Gabriel's violent response demonstrated the gang's willingness to hurt others and warned the community of ESBS's presence in the community.  It also showed that ESBS was not afraid to commit crimes and did not fear law enforcement."  (*People v. Rocha* (E059570) at pp. 7-9.)

A review of defendant's record of conviction shows that no evidence was presented to prove that the benefit to the gang was more than reputational.  As previously noted, " 'Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.' "  (*E.H.*, *supra*, 75 Cal.App.5th at p. 478.)  Further, nothing established that members of ESBS "collectively" engaged in a pattern of criminal activity.  In addition, the jury was not required to make any finding on whether or not the members displayed a pattern of committing qualified crimes collectively.

Accordingly, the case must be remanded to afford the prosecution an opportunity to retry the enhancements and the gang participation conviction in count 3 and meet its new burden of proof pursuant to Assembly Bill No. 333's requirements. (See *E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges."], citing *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72, fn. 2 [statutory amendment retroactively adding

20

additional element to offense allowed prosecution to establish additional element on remand without offending double jeopardy or ex post facto principles].)

IV.

DISPOSITION

We vacate the sentence and reverse the offense of street terrorism or active gang participation (§ 186.22, subd. (a); count 3) and the true findings on the gang enhancement (§ 186.22, subd. (b)(1)) allegations attached to count 1 (assault with a firearm) and count 2 (possession of a firearm by a felon), and remand with directions to (1) give the People an opportunity to retry the offense and enhancements under the law as amended by Assembly Bill No. 333; and (2) if the People elect not to retry defendant, or at the conclusion of retrial, to resentence defendant under the new sentencing laws. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>McKINSTER</u>
J.

21